UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 08-30049- KPN

| | |
|---|---|
| THOMAS TOUPOUNCE,<br>        Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| | ) |
| TOWN OF LEE; PLANNING BOARD OF THE<br>TOWN OF LEE, DONALD R. TORRICO,<br>INDIVIDUALLY AND IN HIS CAPACITY AS<br>BUILDING INSPECTOR FOR THE TOWN OF<br>LEE; GORDON D. BAILEY, INDIVIDUALLY<br>AND IN HIS CAPACITY AS CHAIRMAN OF THE<br>BOARD OF SELECTMEN OF THE TOWN OF<br>LEE; MARTIN H. DEELEY, INDIVIDUALLY<br>AND IN HIS CAPACITY AS A MEMBER OF THE<br>PLANNING BOARD OF THE TOWN OF LEE;<br>DAVID DURANTE IN HIS CAPACITY AS A<br>MEMBER OF THE PLANNING BOARD OF THE<br>TOWN OF LEE;  THOMAS SWIFT IN HIS<br>CAPACITY AS A MEMBER OF THE PLANNING<br>BOARD OF THE TOWN OF LEE; ALDO<br>PASCUCCI IN HIS CAPACITY AS A MEMBER<br>OF THE PLANNING BOARD OF THE TOWN OF<br>LEE; AND ANTHONY CAROPRESO IN HIS<br>CAPACITY AS A MEMBER OF THE PLANNING<br>BOARD OF THE TOWN OF LEE<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

The defendants hereby submit a memorandum of law in support of their motion for

summary judgment, filed simultaneously herewith, pursuant to *Rule 56* of the *Federal Rules of*

*Civil Procedure* and *Local Rules 7.1(B)(1)* and *56.1* as follows:

## INTRODUCTION

This is an action brought by the plaintiff, Thomas Touponce ("Touponce"), against the

Town of Lee (the "Town"), the Town Planning Board (the "Board"), Donald Torrico,

individually and in his capacity as Building Inspector for the Town ("Torrico"), Gordon Bailey,

individually and in his capacity as Chairman of the Board of Selectman of the Town ("Bailey"), Martin Deeley, individually and in his capacity as a member of the Board ("Deeley"), and David Durante, Thomas Swift, Aldo Pascucci and Anthony Caropreso in their capacities as members of the Board (the "Board Members[1]") arising out of five properties owned by Touponce in the Town and his attempts to develop these properties.

## STANDARD OF REVIEW

Under *Rule 56(c)* of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A 'genuine' issue is one that reasonably could be resolved in favor of either party, and a material fact is 'one that might affect the outcome of the suit under the governing law.'" *Wagner v. City of Holyoke, 241 F. Supp. 2d 78, 82 (D. Mass. 2003)*(quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986)*). In order to avoid summary judgment, the plaintiff must establish the existence of every element essential to his case on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).* The plaintiff cannot rely on "mere allegations or evidence that is less than significantly probative." *Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). A* summary judgment opponent must do more than show that there is some metaphysical doubt as to the material facts. Instead, the opponent must present definite, competent evidence in order to survive the motion. *Maldonado-Denis at 581.* Not every genuine factual conflict necessitates a trial. *Wagner, supra at 83.* "It is only when a disputed fact has the potential to change the

---

[1] The Board Defendants include Deeley to the extent that he is named as a defendant in his capacity as a member of the Board.

443610v1

outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Id.* (quotations and citation omitted).

## ARGUMENT

### I.    Touponce is Bound by The Allegations in His Complaint:

The defendants anticipate that, in an effort to defeat summary judgment, Touponce will attempt to raise factual allegations which have not been set forth in his complaint and which are not relevant and material to the claims alleged in his complaint. As a matter of law, however, a "plaintiff is bound by the factual allegations of his complaint...." *Rust v. Tufts University*,[2] *1994 Mass. Super. LEXIS 49, *4* (citing *M.G.L. c. 231, § 87* and *Zaleski v. Zaleski, 330 Mass. 132 (1953))*; *Fed. R. Civ. P. 56.* As such, this Court should consider only those factual allegations which are relevant and material to the specific facts and claims alleged in Touponce's complaint with respect to the defendants' motion for summary judgment.

### II.   This Court Should Enter Judgment in Favor of the Town on Count I (Equal Protection - Violation of *42 U.S.C. § 1983*) of The Complaint Because There is no Evidence That Touponce Was Selectively Treated Differently Than Others Similarly Situated.

In Count I of his complaint, Touponce claims that all of the defendants violated *42 U.S.C. § 1983.* Specifically, Touponce claims that the defendants "intentionally treated [him] differently from others similarly situated, without a rational basis for the difference in treatment." Touponce alleges that "the...actions of the defendants were irrational, intentional and wholly arbitrary, were unrelated to any legitimate state interest and were motivated by subjective ill will...."[3] However, Touponce only makes allegations against Torrico.

As the First Circuit has stated:

> Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective

---

[2] Exhibit A: *Rust v. Tufts University, 1994 Mass. Super. LEXIS 49*
[3] Complaint at ¶ 109

3

> treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Smith v. City of Boston*, 2004 U.S. Dist. LEXIS 13062, *12 (quoting *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)).

"Plaintiffs claiming an equal protection violation must first 'identify and relate **specific** instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression." *Id. at 12-13 (internal quotations omitted).*

In *Smith*, the plaintiff, landlord, argued that an inspection and a "litany of code violations" issued by City inspectors "unreasonably targeted him for enforcement 'as a part of a scheme to embarrass and humiliate him for reasons not associated with the authority and responsibility given the City.'" *Id. at 12.* The plaintiff alleged that the inspectors and the City of Boston treated him "selectively" and the Department's actions constituted "'malicious or bad faith intent to injure.'" *Id*.

Despite these allegations, the Court found that the plaintiff did not offer a "sufficient factual basis to support a conclusion that he was selectively treated." *Id. at 12.* Specifically, the Court noted that the plaintiff failed to identify "other landlords similarly situated" and provided "no examples of how similar code violations were handled." *Id. at 13.* The Court concluded that even though there was some evidence suggesting that pre-existing animosity could have fueled one inspector's interest in issuing a complaint, "the suggestion is too insubstantial to satisfy [the plaintiff's] responsibility to prove the impermissible consideration branch of a selective treatment equal protection claim." *Id. at *15; see also Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 145 (D. Mass. 2006)*(finding that plaintiff's selective treatment equal protection claim against Town and numerous Town officials regarding plaintiff's ownership of ten properties in

4

the Town failed as a matter of law because there was no evidence that others who were similarly situated were treated differently).

The affidavits provided by Touponce in support of his selective treatment equal protection claim evidence that Torrico did not selectively treat Touponce. To the contrary, the affidavits evidence that Torrico actually treated many others in the same way that he treated Touponce. Clearly, Touponce cannot meet his burden of proof on his selective treatment equal protection claim since the evidence reflects that Torrico treated numerous individuals the same way that he treated Touponce.

Furthermore, with respect to all of the defendants, Touponce has failed to introduce evidence that identifies and relates **specific** instances where persons situated similarly to him 'in all relevant aspects' were treated differently. As such, this Court should enter judgment in favor of the defendants on Count I (violation of *§ 1983* based on selective treatment equal protection) of the complaint.

## III.    Count II (Violation of *42 U.S.C. § 1983*)

In Count II of his complaint, Touponce alleges that the Town violated *42 U.S.C. § 1983*, "acting under color of law and pursuant to official policy or custom," by refusing or neglecting to prevent violations of his federal civil rights. Touponce claims that the Town violated *§ 1983* by its "negligent and intentional acts...."

### A.    This Court Should Enter Judgment in Favor of The Town Because There is no Evidence That Touponce Suffered Any Injury as a Result of an Official "Custom or Policy" of The Town.

Touponce alleges that the Town violated *§ 1983* by acts taken pursuant to an official policy or custom. Touponce maintains that the "policy or custom" of the Town "was the fact that [he] was forced to do certain things that other people were not."

"The First Circuit has expressed deep reservations about *section 1983* claims brought in cases involving land-use disputes. The First Circuit's concern is that without a high bar to such

5

claims, federal courts would 'sit as a zoning board of appeals involved in political disputes better left to local governments." *Mongeau v. City of Marlborough, 462 F. Supp. 2d 144, 149 (D. Mass. 2006)*(internal quotations omitted)

"In an official capacity suit, the plaintiff must look to the government entity itself since that entity is the real party in interest." *Id. at 153* (internal quotations omitted).

To establish a *§ 1983* claim against the Town, Touponce must prove:

> the existence of an unconstitutional municipal policy **or** a widespread practice that, although not authorized by written law or express municipal policy, is **so permanent and well settled as to constitute a custom or usage with the force of law**. *Petricca v. City of Gardner, 429 F. Supp. 2d 216, 220 (D. Mass. 2006)*(emphasis added).

In this instance, Touponce does not allege an actual written municipal policy to force him to do things that others were not forced to do. As such, he must establish a widespread practice that is so permanent "that the policy making officials can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Mongeau, supra at 153* (internal quotations omitted). The plaintiff can recover on a theory of municipal liability "**only if he can establish that a policy making official** caused the deprivation of his rights or acquiesced in the longstanding practice or custom." *Id.; see also Walsh, supra at 148-149* (plaintiff offered no evidence that Town, through its officials, had a "municipal custom or policy of deliberate indifference to the commission" of violating the plaintiff's equal protection under a selective treatment theory).

A municipality cannot be held liable under *§ 1983* for actions of its building inspector if the building inspector does not have final policy making authority. *Russell v. City of New Bedford, 74 Mass. App. Ct. 715, 721-722 (2009)*("'trial judge must identify those officials or governmental bodies who speak with final policy making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory

6

violation at issue.'"). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the act of the municipality." *Smith v. City of Boston, 413 Mass. 607, 612 (1992)*(internal quotations omitted). Where a town official is bound by policies and regulations, such official is not considered a "policy maker" for purposes of *§ 1983. Id. at 612-613 and 617.* "The authority to act for the city does not necessarily grant license to establish final policy." *Id. at 617.*

In this instance, Torrico concedes that his job was to "enforce codes of 780 CMR and 521 CMR; to enforce Chapter 199 Town of Lee zoning bylaws as the zoning enforcement officer...."[4] Furthermore, the affidavits of Mr. Gleason and Mr. Carty, provided by Touponce, indicate that Torrico was supposed to follow the state Building Code and the Town's zoning bylaws. However, he often failed to follow these policies. There is no evidence that Torrico was responsible for making final Town policy.

If the court finds that Torrico, as the Town building inspector, was, in fact, the policy making official, Touponce still cannot prevail on his claim unless he proves that the inspector's actions were "the way business is done in [the Town.]" *Mongeau, supra at 154.* "To carry the day on the 'custom' argument, the plaintiff must establish a pattern of occurrences or a practice **similar to that experience by him**, but not necessarily induced by [Torrico], so as to rise to the level of custom thereby having the force and effect of law." *Smith, supra at 616* (emphasis added).

In this instance, Touponce has simply alleged that the Town had a custom or policy of forcing him to do things that others were not forced to do. In making this argument, Touponce cannot and has not claimed that there was a pattern of occurrences by the Town which was similar to those experienced by Touponce which rose to the level of having the force and effect of law. Moreover, there is no evidence that Torrico was the final policy maker with respect to

---

[4] See Exhibit 28, Deposition of Torrico, Vol. I at p. 35 attached to Statement of Facts.

443610v1

the state Building Code and the Town's bylaws. As such, the Town cannot be held liable for Torrico's actions. Therefore, this Court should enter judgment in favor of the Town on Count II (violation of *§ 1983)* of the complaint.

## B. This Court Should Enter Judgment in Favor of The Town Because The Town Did Not Violate a Right Protected by Federal Law.

"As is well established, *§ 1983* creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. Thus, the first inquiry in any *§ 1983* suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Kennedy v. Town of Billerica, 502 F. Supp. 2d 150, 157 (D. Mass. 2007)*(internal citations and quotations omitted).

Touponce alleges that the violation of his Constitutional rights essentially consisted of Torrico "trespassing" by entering his property without first obtaining a search warrant. However, Massachusetts law clearly does not require a building inspector to obtain a search warrant prior to entering upon property. *See 780 CMR 115.6; 780 CMR 5115.5* (attached hereto as Exhibits B and C). Specifically, the Massachusetts State Building Code provides:

> **115.6 General.** In the discharge of his duties, the building official shall have the authority to enter at any reasonable hour any building, structure or premises in the municipality to enforce the provisions of 780 CMR. **If any owner, occupant**, or other person **refuses**, impedes, inhibits, interferes with, restricts or obstructs entry and free access to every part of the structure, operation or premises where inspection authorized by 780 CMR is sought, the building official, or state inspector may seek, in a court of competent jurisdiction, a search warrant so as to apprise the owner, occupant or other person concerning the nature of the inspection and justification for it.... *780 CMR 115.6* (emphasis added).

> **5115.6 Right of Entry.**

> In the discharge of his duties, the building official shall have the authority to enter at any reasonable hour any detached one- or two-family dwelling in the municipality to enforce the provisions of 780 CMR 51.00 through 99.00.

8

> **If any owner, occupant or other person refuses**, impedes,
> inhibits, interferes with, restricts or obstructs entry and free access
> to every part of the detached one- or two-family dwelling where
> inspection authorized by 780 CMR 51.00 through 99.00 is sought,
> the building official, or state inspector, may seek, in a court of
> competent jurisdiction, a search warrant so as to apprise the owner,
> occupant or other person concerning the nature of the inspection
> and justification for it.... *780 CMR 5115.5* (emphasis added).

Furthermore, Massachusetts statutory law provides for criminal penalties for hindering a

building inspector as follows:

> Any person who hinders or prevents or attempts to prevent the
> commissioner, the chief of inspections of the department or any
> inspector or local inspector from entering any building, structure or
> enclosure or part thereof in the performance of his duty in the
> enforcement of the laws of the commonwealth relating thereto
> shall be punished by a fine of not less than fifty nor more than one
> hundred dollars.... *M.G.L. c. 143, § 50.*

Clearly, Touponce does not have a Constitutional right to have the Town Building

Commissioner, Torrico, obtain a search warrant before entering onto any of his properties in the

performance of his duties. Rather, the law provides that if Touponce, or an occupant of one of

his properties, refuses entry, the building commissioner has the right to obtain a search warrant

and gain entry onto the premises. *780 CMR 115.6; 780 CMR 5115.5; see Smith v. City of

Boston, 2004 U.S. Dist. LEXIS 13062, *11 (D. Mass.)*(court found no violation of federal rights

where building inspectors entered property without a warrant within the authority of the

Massachusetts Sanitary Code); *see also, Petricca, supra at 221* (finding that plaintiff could not

establish successful *§ 1983* claim where there was no persuasive evidence that any misconduct of

City officials rose to the level of a constitutional violation).

Because there is no Constitutional right to have a local building inspector obtain a search

warrant prior to enforcing the Massachusetts State Building Code, Touponce cannot maintain his

*§ 1983* claim as a matter of law. Therefore, this Court should enter judgment in favor of the

Town on Count II (violation of *§ 1983)* of the complaint.

9

443610v1

## C.     This Court Should Enter Judgment in Favor of The Town to The Extent Touponce is Claiming That The Town Was Negligent.

To the extent that Touponce is claiming that the Town was negligent, he cannot maintain

such a claim under *§ 1983* because negligence cannot form the basis of a civil rights claim. *See*

*Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 200).* Furthermore his negligence claim is

barred by *M.G.L. c. 258, § 10(b)(e)* and *(f)*.

In *Leatham v. Donell,*[5] the plaintiff alleged that the town was negligent with respect to its

"policy" regarding property inspections and the individual acts of the town building inspector. *6*

*Mass. L. Rep. 87; 1996 Mass. Super. LEXIS 360, \*5-6 (1996).* The court ruled:

> This attempted end-run is without merit. Plaintiffs cannot attack
> the Town's choice of "policy" in light of the discretionary function
> exception contained in c. 258, 10(b). A public employer, such as
> [the town], is not subject to liability for the adoption of a policy
> regarding inspections and permitting because such a choice
> involves a "high degree of discretion and judgment involved in
> weighing alternatives and making choices with respect to public
> policy and planning." *Id.*

The court further ruled that the Town could not be liable for the building inspector's failure to

conduct proper inspections and failure to issue an occupancy permit on a theory of negligence

because "[s]uch conduct falls squarely with the scope of 10(e) and (f)." *Id. at \*5.* Specifically,

the Massachusetts Tort Claims Act shall not apply to:

> (e)     any claim based on the issuance, denial, suspension or
> revocation or failure or refusal to issue, deny, suspend or revoke
> any permit, license, certificate, approval, order or similar
> authorization;
>
> (f)     any claim based upon the failure to inspect, or an
> inadequate or negligent inspection, of any property, real or
> personal, to determine whether the property complies with or
> violates any law, regulation, ordinance or code, or contains a
> hazard to health or safety.... *G.L. c. 258, §§ 10(e)(f).*

---

[5] Exhibit D: *Leatham v. Donell, 1996 Mass. Super. LEXIS 360 (1996)*

10

In this instance, Touponce's alleged "negligent" acts of the Town fall squarely within *G.L. c. 258, §§ 10(b)(e)* and *(f)*.

Furthermore, Touponce failed to make the requisite presentment of any negligence claim to the Town pursuant to *M.G.L. c. 258, § 4*. The Massachusetts Tort Claims Act provides that a plaintiff cannot commence a civil action against a public employer unless the plaintiff "shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose...." *G.L. c. 258, § 4*. "Notice of a claim under c. 258 is required to ensure that the responsible public official receives a notice of the claim so that that official can investigate whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." *Tambolleo v. Town of West Boylston, 34 Mass. App. Ct. 526, 532 (1993)*(internal quotation omitted).

As such, this Court should enter judgment in favor of the Town on Count II of the complaint to the extent that it is based on allegations of negligence as a matter of law.

## D.    Touponce's Claim is Barred With Respect to Any "Trespass" Prior to March 12, 2005 by The Three-Year Statute of Limitations.

Even if this Court finds that Torrico's entry onto Touponce's properties without a search warrant constitutes a "constitutional right," Touponce still cannot prevail on his *§ 1983* claim against the Town for any alleged "trespass" that occurred outside the three-year statute of limitations.

Federal civil rights claims under *§ 1983* are governed by a three-year statute of limitations. *Kennedy, supra, at 155*. The limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis for his claim." *Id*.

In this instance, Touponce was aware of Torrico's acts of "trespass" no later than September 9, 2003, when he served Torrico with a "no trespass notice." After serving this initial

11

notice, Touponce cannot identify any specific date that an alleged trespass by Torrico occurred. He simply maintains that Torrico trespassed on his properties several times over the course of the past six years and that he sent Torrico various no trespass notices.

Touponce commenced this action on March 12, 2008. Therefore, an allegation of a violation of *§ 1983* based on trespass prior to March 12, 2005 is barred by the three-year statute of limitations as a matter of law. Therefore, this Court should enter judgment in favor of the Town on Count II of the complaint with respect to any act of trespass prior to March 12, 2005.

## IV.     This Court Should Dismiss Count III (Violation of *42 U.S.C. § 1983*) of the Complaint Because it is Duplicative of Counts I And II or, in The Alternative, Enter Judgment in Favor of the Town.

As set forth in the defendants' statement of undisputed facts filed simultaneously herewith, Touponce alleges in Count I of his complaint that all of the Defendants are liable for violation of *42 U.S.C. § 1983* essentially with respect to his right to be free from trespass and his right to be treated the same as other citizens of the Town. In Count II of his complaint, Touponce alleges that the Town violated *42 U.S.C. § 1983* by depriving him of his rights under a "policy or custom." In Count III, Touponce again alleges that the Town violated *42 U.S.C. § 1983* in that actions of Town officials "comprise a municipal policy of the intentional violation and/or deliberate indifference to the violation of [Touponce's] constitutional rights."

Count III is simply a combination of Counts I and II. As such, the claim is duplicative and repetitious. Therefore, this Court should dismiss Count III of the complaint. *See Zuckerman v. McDonald's Corp., 1995 U.S. Dist. LEXIS 16030, *3 (D. Mass. 1995)*(dismissing Count III since it was duplicative of Count II).

To the extent that this Court finds Count III is not duplicative of Counts I and II above, the defendants repeat and incorporate their arguments with respect to Counts I and II above and state that, for those same reasons, this Court should enter judgment in favor of the Town on Count III of the complaint as a matter of law.

12

**V.     Touponce's Claims Against The Town, The Board, And The Board Members For Malicious Prosecution, Malicious Abuse of Process, And Interference With Advantageous Business Relations Are Barred Pursuant to *G.L. c. 258, § 10(c)*.**

The Massachusetts Tort Claims Act provides the exclusive remedy for torts against public employers, which includes towns, town boards, town officials, and elected town officers in their official capacities. *M.G.L. c. 258, § 2*; *Bouley v. City of New Bedford, 2005 U.S. Dist. LEXIS 30922, *12; Scrima v. Gay, 322 F. Supp. 2d 49, 50 (D. Mass. 2004)*; *Kelley v. Laforce, 288 F. 3d 1, 12-13 (1st Cir. 2002)*.

Pursuant to *G.L. c. 258, § 10(c)* a municipality and its elected officers cannot be held liable for "any claim arising out of an intentional tort, including ... malicious prosecution, malicious abuse of process ... [and] interference with advantageous relations." Therefore, this Court should enter judgment in favor of the Town, the Board, and the Board Members on Count IV (malicious prosecution), Count V (malicious abuse of process), and Count VI (interference with advantageous relations) of the complaint as a matter of law.

**VI.    This Court Should Dismiss Touponce's Claims Against Torrico, Bailey and Deeley, Individually, For Malicious Prosecution (Count IV).**

In order to prevail on a claim for malicious prosecution, the plaintiff must prove: "(1) that a prosecution was commenced against [him]; (2) that it was instituted and instigated by the defendants; (3) that it was malicious; (4) that it has been legally and finally terminated in the plaintiff['s] favor; (5) that it was without probable cause; and (6) that it caused the plaintiff[] damage." *Nieves v. McSweeney,*[6] *2001 Mass. Super. Lexis 476 *10 (2001)*; *Beecy v. Pucciarelli, 387 Mass. 589, 593 (1982)*.

**A.     Bailey and Deeley:**

In Count IV, Touponce alleges malicious prosecution against all defendants, including Torrico, Bailey and Deeley, in their individual capacities. However, in his complaint, Touponce

---

[6] Exhibit E: *Nieves v. McSweeney, 2001 Mass. Super. Lexis 476 (2001)*

13

only sets forth allegations against Torrico.    Specifically, Touponce alleges that Torrico "instigated criminal prosection" and civil proceedings against him with regard to the Silver Street Property. He also claims that Torrico "instigated and/or participated in" civil proceedings against him with respect to the Meadow Street Property.

There is no evidence, and no allegations, that either Bailey or Deeley ever commenced any legal proceedings against Touponce. As such, Touponce cannot meet his burden of proving malicious prosecution with respect to these defendants as a matter of law. Therefore, this Court should enter judgment in favor of Bailey and Deeley on Count IV (malicious prosecution) of the complaint.

## B.    Torrico – Meadow Street Property:

In his complaint, Touponce alleges that "**the Town**" commenced civil proceedings against him in the "Housing Court, Western Division (docket no. 05-CV-00428)" with respect to the Meadow Street Property.[7]  Touponce is bound by this allegation. *Rust, supra.*  Specifically, on September 9, 2005, the Town, by its attorney, commenced the action for injunctive relief in the Housing Court.

There is no evidence, and no allegation, that Torrico commenced the civil proceedings in the Housing Court with respect to the Meadow Street Property.  At most, Torrico issued a violation notice to Touponce after receiving complaints from abutters.  As such, Touponce cannot meet his burden of proving malicious prosecution with respect Torrico and the Meadow Street Property as a matter of law.  Therefore, this Court should enter judgment in favor of Torrico on Count IV (malicious prosecution) of the complaint.

## C.    Torrico – Silver Street Property:

Touponce alleges that Torrico "instigated criminal prosection" and civil proceedings against him with regard to the Silver Street Property.  However, at his deposition, Touponce

---

[7] Complaint at ¶ 90.

14

conceded that, although Torrico requested that a criminal complaint issue regarding the Silver Street Property, in fact, no criminal proceedings were ever commenced. As such, Touponce cannot meet his burden of proving malicious criminal prosecution with respect to Torrico and the Silver Street Property as a matter of law.

With respect to the civil claim, Torrico filed an "Application for Temporary Restraining Order" against Touponce concerning the Silver Street Property in the Housing Court.[8] On June 30, 2004, after an evidentiary hearing, the Housing Court denied the Application for Temporary Restraining Order.

There is a three (3) year statute of limitations on a malicious prosection claim which begins to run when a claim terminates in favor of the plaintiff. *See M.G.L. c. 260, § 2A; Nieves v. McSweeney, 231 F.3d 46, 51 (1st Cir. 2001)*. In this instance, the only matter before the Housing Court for consideration was the Application for Temporary Restraining Order. The Housing Court ruled in favor of Touponce on June 30, 2004 when it denied the application. However, Touponce did not bring his claim for malicious prosecution against Torrico (and the other defendants) until March 12, 2008 – beyond the three-year statute of limitations. Therefore, Touponce's claim against Torrico for malicious prosecution with respect to the Silver Street Property is barred by the applicable statute of limitations. As such, this Court should enter judgment in favor of Torrico on Count IV (malicious prosecution) of the complaint.

## VII.  This Court Should Dismiss Touponce's Claims Against Torrico, Bailey and Deeley, Individually, For Abuse of Process (Count V).

To establish a claim for malicious abuse of process, a plaintiff must prove that: (1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) that resulted in damage. *Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 405 (2002)*. "[I]t must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended,

---

[8] Complaint at ¶ 80 and Exhibit N thereto.

or which was not the legitimate purpose of the particular process employed." *Beecy, supra at 595.*

## A. Bailey and Deeley:

Touponce alleges malicious abuse of process against all of the defendants including Torrico, Bailey and Deeley, in their individual capacities. Again, however, Touponce only sets forth allegations with regard to Torrico individually. Specifically, Touponce claims that Torrico initiated criminal and civil proceedings against him with respect to the Silver Street Property and that the Town commenced civil proceedings against him with respect to the Meadow Street Property.

There is no evidence, and no allegations, that either Bailey or Deeley ever "used process" against Touponce. As such, Touponce cannot meet his burden of proving malicious abuse of process with respect to these defendants as a matter of law. Therefore, this Court should enter judgment in favor of Bailey and Deeley on Count V (malicious abuse of process) of the complaint.

## B. Torrico – Meadow Street Property:

As set forth above, the Town commenced the proceedings against Touponce with respect to the Meadow Street Property in the Housing Court. Moreover, Touponce admits that the action filed by the Town was one "for injunctive relief...."[9] In *Jones v. Brockton Public Markets, Inc.,* the Supreme Judicial Court of Massachusetts stated that "process" in an action for abuse of process is "limited to three types of process: writs of attachment; the process used to institute a civil action; and, the process related to the bringing of criminal charges." *369 Mass. 387, 389-390 (1975).* (internal citations omitted). The Court expressly declined to "broaden [the] definition of process to include injunctions...." *Id. at 390.* As such, Touponce cannot meet his burden of proving that Torrico used "process" against him with respect to the Meadow Street

---

[9] Complaint at ¶ 90.

16

443610v1

Property as a matter of law. Therefore, this Court should enter judgment in favor of Torrico on Count V (malicious abuse of process) of the complaint.

## C. Torrico – Silver Street Property:

Touponce alleges that Torrico instigated criminal prosecution and civil proceedings against him with regard to the Silver Street Property. As discussed above, Touponce admits that no criminal matter ever commenced against him with respect to the Silver Street Property.

With respect to the civil proceedings, Touponce admits that on June 9, 2004, Torrico brought an action against him in Housing Court "for injunctive relief."[10] As a matter of law, an action seeking an injunction is not "process" which may properly form the basis of a claim for abuse of process. *Jones, supra at 389-390.* As such, Touponce cannot meet his burden of proving that Torrico "used process" against him with respect to the Silver Street Property as a matter of law.

In addition, the statute of limitations for a claim of malicious abuse of process is three (3) years. *M.G.L. c. 260, § 2A.* "As distinguished from a claim for malicious prosection, however, an action for abuse of process **accrues on the date the prior proceeding was filed.**" *Britton v. Thompson,*[11] *1999 Mass. Super. LEXIS 166, \*8 (1999)* (citing *Quaranto v. Silverman, 345 Mass. 423, 426 (1963))* (emphasis added). In this instance, Torrico filed his application for an injunction with the Housing Court on June 9, 2004. As such, the three-year statute of limitations began to run on that date. Torrico, however, did not file his complaint until March 12, 2008. As such, Torrico's claim for abuse of process with respect to the Silver Street Property is barred by the statute of limitations. Therefore, this Court should enter judgment in favor of Torrico on Count V (malicious abuse of process) of the complaint.

---

[10] Complaint at ¶ 76.
[11] Exhibit F: *Britton v. Thompson, 1999 Mass. Super. LEXIS 166 (1999)*

17

443610v1

## VIII. This Court Should Dismiss Claims Against Torrico, Bailey and Deeley, Individually, For Tortious Interference With Advantageous Business Relations (Count VI):

In Count VI, Touponce alleges tortious interference with advantageous business relations against all of the defendants, including Torrico, Bailey and Deeley, in their individual capacities. Specifically, Touponce alleges that the defendants interfered with his compost operation at the Meadow Street Property; his business relationship with Petricca pertaining to the Housatonic Street Property, as well as his relationship with Tower at the Housatonic Street Property by entering the premises and demanding a copy of the lease agreement and subjecting the plaintiff and Tower to threats of zoning violations; and by interfering with his interest at the Silver Street Property with Carriage House Realty.

In order to show a tortious interference with advantageous business relations, the plaintiff must show (1) a business relationship or prospective contractual relationship with economic benefit; (2) the defendants' knowledge of such relationship; (3) the defendants' intentional and malicious interference with it; and (4) his loss of advantage directly resulting from the defendants' conduct. *Kurker v. Hill, 44 Mass. App. Ct. 184, 191 (1998); Comey v. Hill, 387 Mass. 11, 19 (1982).*

A claim for tortious interference with contractual or economic relations requires more than intentional conduct by the tortfeasor. *United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).* A claimant must also establish that the intentional interference stems from improper motives or results from the use of improper means. *Id, at 816-817.* The tort requires "actual malice" or "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *King v. Driscoll, 418 Mass. 576, 587 (1994).* Actual pecuniary damage is a necessary element of the claim.

18

There is no evidence of record which supports Touponce's allegation that any of the defendants employed improper means or had some improper motive with respect to Touponce. As such, Touponce cannot meet his burden of proof on this claim as a matter of law.

In addition, the defendants are entitled to qualified immunity on this claim. *See EIC Development, LLC v. Mystic Valley Devel. Commission, 16 Mass. L. Rep. 138; 2003 Mass. Super. LEXIS 90 \*42; Licari v. Ferruzzi, 1995 Mass. Super. LEXIS 771 \*8.* Under the doctrine of qualified immunity, public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).* For the defendants to be individually liable for intentional interference with advantageous relations, this court must determine whether an alleged right was established with sufficient particularity that a reasonable official would anticipate that his actions would violate that right. *Borucki v. Ryan, 827 F. 2d. 836, 838 (1st Cir. 1987), citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).* In determining whether an alleged statutory or constitutional right was clearly established, this court must apply a "wholly objective standard," since the focus is on what a reasonable person would have known, not the state of mind of the individual public official. *EIC Development, LLC, supra at \*43.*

The tort of intentional interference with advantageous relations involves intentional interference with business relations "through improper motive or means." *EIC Development, LLC, supra at \*44.* "The improper motive required is actual malice – a spiteful, malignant purpose, unrelated to the legitimate corporate interest. The motivation of personal gain, including financial gain, generally is not enough to satisfy the improper interference requirement. Nor is 'personal dislike' enough to prove an improper motive." *Id. at \*45* (quoting *King v. Driscoll, 418 Mass. 576, 587 (1994)*)(internal citations and quotations omitted).

19

"[A] public official is **always** protected by qualified immunity from a claim of tortious interference that rests on the public official's 'improper motive' because liability in such cases necessarily rests on the defendant's state of mind, not simply the nature of his conduct." *Id. at *46* (finding that town officials were entitled to qualified immunity on claim of intentional interference with contractual relations based on allegations that town officials thwarted the plaintiff's efforts to develop the premises so that a defendant could obtain the premises through sale or eminent domain "on the cheap.")(emphasis added); *see also Licari, supra* (finding that town officials were entitled to qualified immunity on claim of intentional interference with contractual relations based on allegations that official intentionally stalled a development project which caused the plaintiff to default on its loan). A public official may not be protected by qualified immunity from a claim of tortious interference only when the alleged interference was committed through "improper means," because only then would liability rest on the conduct alone and not on the public official's state of mind. *EIC Development, LLC at *46*.

In the instant case, there is no evidence that any of the individual defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known.

For instance, with respect to Touponce's commercial compost operation at the Meadow Street property, Touponce cannot point to any clearly established law or right that was violated by the individual defendants when the Town instituted a civil action against him in Housing Court. In particular, Toupounce has not set forth any allegations regarding Martin Deeley or Gordon Bailey. To the extent that Touponce alleges that Torrico is liable for issuing a violation with regard to the composting operation, Touponce cannot demonstrate that he violated a clearly established statutory or constitutional right of which a reasonable person would have known. Indeed, Touponce himself describes the Meadow Street property as consisting of piles of material that were stockpiled and he admitted that 90 per cent of the materials were brought to

20

the property from offsite which calls into question whether it was a legitimate agricultural use of the property. That is, placing, storing or dumping rubbish and debris on his property was in violation of the Agricultural Preservation Restriction Agreement that governed the property since 1989 and the Department of Agricultural Resources cited Touponce for engaging in commercial activities on his property previously. With respect to the composting commercial operation, it is significant that following a hearing, the Housing Court allowed the Town's motion for preliminary injunction regarding Touponce's commercial composting business. Finally, it is especially important to note that Torrico issued the violation notice following a complaint from a Town resident. That is, the issue was not initiated by Torrico.

With respect to the alleged interference with Touponce's business relationship with Petricca, it is significant that the Housatonic Street property has never had handicap accessibility to the second floor and Torrico believed that the property was open to the public. It is also significant that the Architectural Access Board notified the Highway Director that it should cease and desist the use of the second floor at the "offending facility."

With respect to Touponce's contention that Torrico interfered with his relationship with Carriage House Realty, Touponce can point to no statute or regulation prohibiting a Town building official from notifying a realtor when the building official believes that violations existed at a property.

With respect to Touponce's allegation that Torrico entered the Housatonic Street property and demanded a copy of the lease agreement between Tower and Touponce, the established facts simply do not bear this out. That is, Carrie Swain, a Tower employee, admitted that Torrico asked her for a copy of the lease while she was visiting the Town building department and she subsequently e-mailed it to him. Even if Torrico had gone to the property and requested a copy of the lease agreement, however, he would not have violated any clearly established law or right.

21

443610v3

With respect to Touponce's allegation that Torrico interfered with his business relationship with Tower and arbitrarily and maliciously subjected him and Tower to threats of zoning violations because Touponce and/or Tower did not undergo site plan review when Tower became a tenant at the Housatonic Street property, Touponce also cannot show that Torrico violated a clearly established law or right. Indeed, a review of the pertinent zoning bylaws indicates that the Town had a valid reason for requiring site plan review for any businesses located in the CBC District since this district constitutes entrance to the Town. Furthermore, Section 199-19C(1), can reasonably be interpreted as requiring that businesses located in the CBC District be required to undergo site plan review whenever there is a change in use. There is ample evidence that there is a difference of opinion between the officials of the Town, given the differing decisions of the Planning Board members and the Zoning Board of Appeals. As such, there is no evidence that Torrico's actions in believing that site plan review was required were arbitrary or malicious. Also, to the extent that Touponce attempts to assert claims on behalf of Tower, he cannot do so as Tower is not a party to this litigation.

In summary, plaintiff's claim for intentional interference with advantageous relations should be dismissed against all defendants. Indeed, the following language from the court in *EIC Development, LLC* is noteworthy.

It is appropriate to consider for a moment what the world would look like if public officials were not protected by qualified immunity from claims of tortious interference…based on alleged improper motive. In such a world, public officials would be vulnerable to personal liability whenever such a claim were made, because the allegation involved intentional conduct. The public official would never prevail on a motion to dismiss such a claim because the mere allegation of improper motive would be sufficient to defeat such a motion. While few such claims would likely succeed in proving that the public official acted with "improper motive," since the definition of that term is so demanding, public officials would certainly fear such lawsuits because of the inherent unpredictability of legal findings regarding their state of mind. For all these reasons, some public officials would be intimidated by the threat of such a lawsuit because of the personal financial risks that a lawsuit would bring. They could not avoid such a lawsuit by ensuring that their conduct remained within "a safe harbor," because the lawsuit would rest on their alleged improper motive, not the

22

nature of their conduct. The only sure way to avoid a threatened lawsuit would be to capitulate to the demands of the party threatening such a suit. *EIC Development, LLC at \*47-48.*

## IX. Violation of M.G.L. c. 12, §§ 11H and 11I (Count VII)

In Count VII, Touponce alleges that all of the defendants deprived him of his rights secured by the Constitution or by the laws of Commonwealth of Massachusetts by "threats, intimidation or coercion" in violation of the Massachusetts Civil Rights Act (*M.G.L. c. 12, §§ 11H and 11I*)(the "MCRA"). Specifically, Touponce claims that the "defendants' attempts to thwart [his] projects th[r]ough adverse administrative action unrelated to the defendants' legitimate concerns constitute a scheme of harassment."[12]

To establish a cause of action under the MCRA, "the plaintiff must prove that [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or Massachusetts was interfered with, or that there was an attempted interference, and that the interference or attempted interference was by threats, intimidation or coercion." *LaManque v. Massachusetts Dept. of Employment and Training, 3 F. Supp. 2d 83, 92-93 (D. Mass. 1998).*

### A. Touponce's Claim Against The Town, The Board, And The Board Members Must Fail Because These Defendants Cannot be Sued Under the MCRA.

The Town is entitled to summary judgment on Touponce's claim under the MCRA because under Massachusetts law, municipalities, municipal departments and municipal employees in their official capacities cannot be sued under the MCRA. *Kelley v. LaForce, 288 F.3d 1, 10, n.9 (1ˢᵗ Cir. 2002); Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 593 (2001)* (concluding that, unlike *§ 1983*, municipalities, municipal departments, and municipal employees in their official capacities are not "persons" within the terms of MCRA). As such, this Court should enter judgment in favor of the Town, the Board and the Board Members on Count VII of the complaint.

---

[12] Complaint at ¶¶ 145-149 (emphasis added).

**B.      Torrico, Bailey and Deeley Cannot be Liable Because There is no Evidence That They Interfered With, or Attempted to Interfere With, Touponce's Civil Rights.**

This Court should enter judgment in favor of Torrico, Bailey and Deeley, individually, since there is no evidence that they attempted to interfere with, or did interfere with, Touponce's civil rights. In order for the individual defendants to be liable for violation of the MCRA, Touponce must first prove that the defendants interfered with, or attempted to interfere with, "[his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or Massachusetts" *LaMangue, supra.* As set forth in detail above, there is no evidence that Torrico, Bailey and/or Deeley interfered with, or attempted to interfere with, any of Touponce's protected rights. In addition, they are entitled to Qualified Immunity as outlined above. As such, Touponce cannot meet his burden of proof on his MCRA claim against these defendants as a matter of law. Therefore, this Court should enter judgment in favor of Torrico, Bailey and Deeley on Count VII (violation of the MCRA) of the complaint.

**C.      Touponce's Claim Against Torrico, Bailey, and Deeley, Individually, Must Fail Because There is no Evidence of Threats, Intimidation or Coercion.**

Touponce's claims against Torrico, Bailey, and Deeley must also fail because there is no evidence in the record that any of these defendants used threats, intimidation or coercion to interfere with or to attempt to interfere with Touponce's civil rights.

Under the MCRA, "'threat'… involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm, [and] 'intimidation' involves putting in fear for the purpose of compelling or deterring conduct." *Planned Parenthood League of Mass. v. Blake, 417 Mass. 467, 474 (1994), cert. denied, 513 U.S. 868 (1994).* "Coercion" has been defined as "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Id.* An objective standard is to be used to determine if a reasonable person **in the plaintiff's position** would have been

24

threatened, intimidated or coerced by the defendant's conduct. *Planned Parenthood League, supra at 474-75* (emphasis added).

There must be an "actual or potential *physical* confrontation accompanied by a threat of harm" to prevail on a civil rights claim. *LaManque, supra at 93* (emphasis in original) (citations omitted). There must be a threat linked to a physical confrontation. *Id.; see also Horne v. City of Boston, 509 F. Supp. 2d 97, 115 (D. Mass. 2007)*("Although there may be circumstances in which a showing of economic coercion, standing alone, may be actionable under the MCRA, almost all of the reported cases involve an element of physical force or confrontation."). A "collection of minor, possibly harassing incidents cannot be sufficient to satisfy the definition of threatening or coercive conduct" under the MCRA. *Meuser v. Federal Express Corp., 524 F. Supp. 2d 142, 148 (D. Mass. 2007)*.

The "MCRA requires that a plaintiff's perception of a threat, intimidation, or coercion be objectively reasonable." *Id.* "A single physical gesture and comment," which is not overtly physically threatening, "cannot form the basis of an objectively reasonable belief of harm." *Id.*

A "threat to use lawful means to reach an intended result is not actionable under the MCRA." *Smith v. City of Boston, 2004 U.S. Dist. LEXIS 13062, *22 (D. Mass. 2004)*.

### 1. **Bailey and Deeley:**

At his deposition, Touponce conceded that he never felt threatened, intimidated or coerced by Bailey or Deeley.[13] As such, Touponce cannot meet his burden of proof under the MCRA with respect to these defendants as a matter of law. *G.L. c. 12, §§ 11H and 11I.* Therefore, this Court should enter judgment in favor of Bailey and Deeley on Count VII (violation of the MCRA) of the complaint.

---

[13] Exhibit 12, Depo. of Touponce, Vol. II at pp. 137-138, attached to Statement of Facts.

443610v1

### 2. Torrico:

With respect to Torrico, Touponce claims that Torrico "coerced [him] into doing things ... during the permitting process that were not called for. He made a statement **to one of my tenants** that was a threat to me."[14] (Emphasis added).

There is no evidence of any threats, intimidation or coercion by Torrico with respect to Touponce. Even if this Court accepts Touponce's version of the alleged "threat" by Torrico to Touponce's tenant, Mr. Bellora, there is no evidence of a physical confrontation involving a threat of harm. In fact, Mr. Bellora admits that he did not believe Torrico was serious when he made the statement. As such, Touponce cannot meet his burden of proving any alleged threats, coercion or intimidation with respect to Torrico as a matter of law. Therefore, this Court should enter judgment in favor of Torrico on Count VII (violation of the MCRA) of the complaint.

## X. Count VIII

In Count VIII of his complaint, Touponce alleges that the defendants "violated Articles 1 and 10 of the Massachusetts Declaration of Civil Rights." Specifically, Touponce claims that the defendants violated his "constitutional right to own land and to use and improve it according to his conceptions of pleasure, comfort or profit." He alleges that, by their actions, the defendants have deprived him of his "constitutional right to the exercise of liberty and the pursuit of happiness."

Article 1 of the Massachusetts Declaration of Rights provides:

> All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of **sex, race, color, creed or national origin.** *ALM Constitution Pt. 1, Art. 1 (2009)*(emphasis added).

---

[14] *See* Exhibit 12, Depo of Touponce, Vol. II at p. 137 attached to Statement of Facts.

443610v1

Article 10 of the Massachusetts Declaration of Rights provides in pertinent part:

> Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to the standing laws.... *ALM Constitution Pt. 1, Art X (2009)*.

A plaintiff's claim under Article 1 is essentially an equal protection claim. *Cohen v. Board of Water Commissioners, 411 Mass. 744, 752-753 (1992); Walsh v. Sodexho USA, Inc,*[15] *4 Mass. L. Rep. 626; 1995 Mass. Super. LEXIS 72, *9.*

"It has become elementary in constitutional law that the natural, essential and unalienable rights of all men to acquire, possess, and protect property are subject to reasonable regulation in the interest of the public health, the public safety, and the public morals." *Commonwealth v. Higgins, 178 N.E. 536, 537 (1931)*(internal quotations omitted).

For the same reasons set forth with respect to Touponce's equal protection claim (Count I) above, Touponce cannot maintain his claim for violation of Article 1 of the Massachusetts Declaration of rights as a matter of law.

The Defendants,
BY THEIR ATTORNEYS
MORRISON MAHONEY LLP

/s/ Carole Sakowski Lynch
Carole Sakowski Lynch, BBO#547718
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA 01115-5387
(413) 737-4373
(413) 739-3125 (Fax)

I hereby certify that this document, filed
through the ECF System, will be sent
electronically to the registered participants
as identified on the Notice of Electronic
Filing (NEF), and paper copies will be sent
to those indicated as non-registered
participants on December 2, 2009.
/s/ Carole Sakowski Lynch

---

[15] Exhibit G: *Walsh v. Sodexho USA, Inc., 4 Mass. L. Rep. 626; 1995 Mass. Super. LEXIS 72*

443610v1